751 N.W.2d 595 (2008)
275 Neb. 986
ANDERSON EXCAVATING CO., Appellant,
v.
Beverly NETH, Director, Department of Motor Vehicles, State of Nebraska, Appellee.
No. S-07-539.
Supreme Court of Nebraska.
June 27, 2008.
*596 Timothy L. Moll and Sara S. Pillen, of Rembolt Ludtke, L.L.P., Lincoln, for appellant.
Jon Bruning, Attorney General, and L. Jay Bartel, for appellee.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.
CONNOLLY, J.

I. SUMMARY
Anderson Excavating Co. (Anderson) is licensed under the International Fuel Tax Agreement (IFTA) and registered under the International Registration Plan (IRP). Nebraska is Anderson's base jurisdiction for IFTA and IRP. After an audit of Anderson's records, the Department of Motor Vehicles (DMV) concluded that the records failed to comply with the recordkeeping requirements of IFTA and IRP. Consequently, the DMV disallowed tax credits under IFTA and assessed additional registration fees under IRP. Anderson sought review by the district court. The district court affirmed the DMV's assessments.
To obtain credits for taxes paid in fuel purchases, an IFTA provision purports to require that licensees retain receipts showing the unit number of the vehicle being fueled to verify that the fuel was placed in an IFTA-qualified vehicle. Many receipts Anderson supplied for the audit did not include the unit number, so the DMV disallowed tax-paid credit for those purchases. Anderson contends that it was not required to document unit numbers and that the only requirement was that it could distinguish between qualified and nonqualified fuel purchases. Anderson claims it *597 can connect fuel purchases to qualified vehicles because the receipts identified the drivers and Anderson can link drivers to qualified units. Anderson therefore contends that the DMV should not have disallowed the tax-paid credits under IFTA.
IRP requires that a registrant maintain mileage records supporting the registrant's claimed total distance traveled in each jurisdiction. If the registrant's mileage records are inadequate and an estimate of the registrant's true liability cannot be determined, the auditing jurisdiction may assess 100-percent registration fees for that jurisdiction. Anderson did not maintain the required mileage records, so the DMV assessed 100-percent fees for Nebraska. Anderson claims that even though it did not maintain mileage records, the DMV can estimate the percentage of miles Anderson traveled in each jurisdiction. Anderson argues that the DMV can estimate the percentage by looking at payroll records showing the percentage of hours worked in each jurisdiction. Anderson argues that the DMV can determine an estimate of Anderson's true liability and that therefore, the 100-percent assessment was improper.
We affirm the district court's IFTA decision because we conclude that Anderson's records were insufficient for the DMV to verify Anderson's claims for tax-paid credit. We also affirm the court's IRP decision because we conclude that Anderson's payroll records did not enable the DMV to estimate Anderson's IRP liability.

II. BACKGROUND

1. IFTA AND IRP
IFTA is a cooperative fuel tax agreement between Nebraska and other states. Under IFTA, licensees report and pay motor fuel use taxes to a base jurisdiction for distribution to other member jurisdictions in which the licensee traveled and incurred motor fuel use tax liability. The licensee's base jurisdiction has the primary responsibility for administering the agreement and executing its provisions with respect to the licensee. For instance, the base jurisdiction audits its licensees for all member jurisdictions.
IRP is a registration reciprocity agreement among states of the United States and provinces of Canada providing for payment of license fees based on the distance traveled in all jurisdictions. Under IRP, the operator of a fleet of apportionable vehicles registers the fleet in the base jurisdiction. The base jurisdiction then apportions and distributes registration fees to the cooperating jurisdictions. The registration fees are based in part on the percentage of miles traveled in each member jurisdiction. As with IFTA, the base jurisdiction is responsible for auditing its registrants for the other jurisdictions.

2. ANDERSON'S AUDIT
Anderson is an excavation contractor. Anderson demolishes buildings, bridges, and other structures and hauls the debris to landfills or recycling centers. Anderson primarily operates in Omaha, Nebraska, and Council Bluffs, Iowa, but does some work in other states.
In 2005, the DMV audited Anderson's records for compliance with IFTA and IRP. The IFTA audit period was from July 1, 2003, through June 30, 2004. The IRP audit period included the registration years 2003 through 2005, but only registration years 2003 and 2004 are at issue here. The DMV found that Anderson's records were incomplete. Because Anderson failed to maintain proper records, the DMV disallowed more than $17,000 of tax-paid fuel credits Anderson had included on its IFTA return and assessed a 100-percent IRP registration fee for Nebraska.
Anderson protested the alleged deficiencies. After IFTA and IRP hearings, the *598 hearing officer affirmed the deficiency determinations. Anderson appealed to the district court, which affirmed the hearing officer's orders.

III. ASSIGNMENTS OF ERROR
Anderson assigns, restated, that the district court erred in concluding that Anderson (1) was not entitled to credit for tax-paid fuel under IFTA and (2) owed additional registration fees to the DMV under IRP.

IV. STANDARD OF REVIEW
[1,2] The Administrative Procedure Act (APA) governs Anderson's appeal.[1] A judgment or final order rendered by a district court in a judicial review under the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[2] When reviewing a district court's order under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]
[3] The meaning and interpretation of statutes and regulations are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[4]

V. ANALYSIS

1. IFTA ASSESSMENT
[4] Anderson claimed a tax-paid credit on its IFTA return for diesel purchases on which Anderson had already paid fuel tax. The DMV disallowed many credits, claiming Anderson's records were insufficient to prove the gallons Anderson reported on its return. Anderson argues the DMV improperly disallowed the credit.
To resolve this issue, we review Nebraska statutes[5] and regulations[6] and the IFTA governing documents, which include the articles of agreement, procedures manual, and audit manual. The record contains copies of the IFTA governing documents. The copies show that some provisions, including provisions on which we rely, were revised after the relevant audit periods. The copies contain the provisions as revised and do not include the prerevision language. Because these copies were included in the record, we assume the parties intended for us to rely on the text therein, including the revisions.
Section R700 of the articles of agreement requires that licensees maintain records to substantiate information reported on their IFTA tax returns. The audit manual's § A550.200 further provides, "When tax paid fuel documentation is unavailable, all claims for tax paid fuel will be disallowed." So, to decide whether the DMV properly disallowed the tax paid fuel credits, we must determine whether the "tax paid fuel documentation [was] unavailable." And to determine whether the documentation was unavailable, we must first decide what documents were required.
Sections R700 and R1010.200 of the articles direct us to the procedures manual for the specific recordkeeping requirements. The procedures manual's § P560 establishes *599 the recordkeeping requirements for tax-paid retail purchases:
.100 Retail purchases must be supported by a receipt or invoice....
.200 Receipts for retail fuel purchases must identify the vehicle by the plate or unit number or other licensee identifier, as distance traveled and fuel consumption may be reported only for vehicles identified as part of the licensee's operation.
.300 An acceptable receipt or invoice must include, but shall not be limited to, the following:
.005 Date of purchase;
.010 Seller's name and address;
.015 Number of gallons or liters purchased;
.020 Fuel type;
.025 Price per gallon or liter or total amount of sale;
.030 Unit numbers; and
.035 Purchaser's name....
(Emphasis supplied.) For our analysis, we will focus on the item in subsection.300.030unit numbers.
After auditing Anderson's records, the DMV allowed tax-paid credit for purchases documented by receipts listing a unit number for the truck being fueled. But many receipts Anderson supplied for the audit did not include the unit number. The DMV claimed that without a unit number, it could not verify that Anderson put the fuel in an IFTA-qualified vehicle. So, the DMV disallowed tax-paid credit when the receipts did not include a unit number.
Anderson does not dispute that many receipts were missing unit numbers. Instead, Anderson contends that unit numbers were unnecessary. Anderson argues that the IFTA procedures manual does not require unit numbers. Anderson also argues that the Nebraska IFTA regulations do not require unit numbers. As discussed below, we conclude that the district court did not err in its findings.

(a) Contrary to Anderson's Argument, Its Records Were Insufficient Even Under the Procedures Manual's § P560.200
[5] Anderson contends that it met the recordkeeping requirements in the procedures manual's § P560. Section P560 contains three subsections: .100, .200, and.300. Subsection .300 lists several items that must be included on each receipt, including unit numbers. But Anderson argues that subsection .200 clarifies subsection.300. Subsection .200 states, "Receipts for retail fuel purchases must identify the vehicle by the plate or unit number or other licensee identifier, as distance traveled and fuel consumption may be reported only for vehicles identified as part of the licensee's operation." (Emphasis supplied.) Relying on subsection .200, Anderson argues that a specific unit number is not required if another "licensee identifier" exists. Anderson claims the receipts included a licensee identifier because although not all the receipts included unit numbers, they did identify the driver by name or credit card number.
Admittedly, the language in subsection.200 appears inconsistent with the language in subsection .300: subsection .200 requires "plate or unit number or other licensee identifier," while subsection .300 specifically requires unit numbers.
The parties have not favored us with an explanation of IFTA's tax-paid credits. Without such an explanation, we are unable to reconcile the apparent inconsistency between subsections .200 and .300. It may simply be an issue of fuzzy drafting. But even if subsection .200 applied and allowed a licensee to provide a vehicle identifier other than a unit number, we conclude that the identifier must be sufficient for the DMV to properly conduct its audit.
The articles of the IFTA agreement explain that to qualify for the tax-paid credit, *600 the fuel must be placed in an IFTA-qualified vehicle. Not all vehicles in a licensee's fleet will necessarily be qualified vehicles. For instance, the record shows Anderson had smaller diesel trucks that were not IFTA-qualified. Therefore, even if subsection .200 applies to allow an identifier other than a unit number, the identifier must enable the DMV to verify that the fuel was placed in an IFTA-qualified vehicle. We agree with the DMV that Anderson provided insufficient identification information.
[6] Anderson counters it can link fuel purchases to qualified vehicles. Relying on a company policy that requires drivers to use the same truck each day, Anderson argues that the driver's name on the receipt adequately identifies the truck being fueled. We disagree with Anderson's assertion that "the identification of the driver is the functional equivalent to a unit number."[7]
During the audit period. Buck's, Inc., was the primary vendor Anderson used for fueling its fleet of trucks. At Buck's, each driver would sign his or her name to a log and list the date, the number of gallons purchased, and the total amount of the sale. Though most drivers did not list a unit number when signing the log, "R.D." often included his unit number. He most often listed unit No. 317, but occasionally, he listed other units, including Nos. 154, 324, and 306. The log shows that although R.D. usually drove unit No. 317, not every purchase R.D. made was for unit No. 317. A driver's name is simply not equivalent to a unit number.
Also, as mentioned, Anderson had smaller diesel trucks that were not IFTA-qualified. Therefore, knowing a particular driver made a diesel purchase is insufficient to determine that the fuel went into a qualified vehicle because without a vehicle identifier, the DMV cannot verify that the driver was not driving one of these nonqualified trucks.
We conclude that even if subsection .200 applies to allow an identifier other than a unit number, Anderson's records were insufficient. With only the driver's name, the DMV could not verify that Anderson met the threshold condition of placing the fuel in an IFTA-qualified vehicle. Anderson's reliance on sub-section .200 fails.

(b) Anderson's Reading of the DMV's Regulation Does Not Help Anderson
Anderson also relies on a DMV regulation implementing IFTA to argue that its receipts were adequate even without unit numbers. That regulation provides: "No tax-paid credit fuel shall be allowed pursuant to IFTA unless licensee is able to distinguish fuel used by qualified versus nonqualified motor vehicles as specified in the agreement."[8] Anderson contends that the regulation does not require licensees to provide receipts listing unit numbers. According to Anderson, the regulation requires only that the licensee can distinguish between qualified and nonqualified fuel purchases. Anderson again argues that unit numbers are simply one means of connecting fuel purchases to qualified vehicles, but not the sole means. Anderson claims it can link fuel purchases to qualified vehicles by using the driver's name on the receipt.
Even if Anderson's reading of the regulation is correct, the regulation does not help Anderson under these facts. As discussed, we conclude that Anderson's receipts were insufficient to link fuel purchases to qualified vehicles. With no vehicle *601 identifier other than a driver's name, the DMV could not verify that the fuel was placed in a qualified vehicle.

(c) The District Court Did Not Err in Affirming the DMV's IFTA Deficiency Determination
Nebraska, as Anderson's base jurisdiction, is responsible for conducting an accurate audit for the other member jurisdictions. The audit manual's § A100 stresses the base jurisdiction's responsibility:
The IFTA requires licensees to pay fuel taxes to each participating jurisdiction commensurate with the distance traveled in each jurisdiction. To fulfill this requirement, an effective and uniform audit program is necessary to verify the integrity of IFTA tax returns. It is essential that the basic audit program adopted by each jurisdiction be uniform and thorough to insure accuracy. It is each jurisdiction's responsibility to ... conduct an accurate audit in a professional manner....
Nebraska cannot fulfill its responsibility of conducting an accurate audit when the licensee's records are insufficient to verify information on the licensee's IFTA tax return.
We conclude that to support Anderson's claims for tax-paid credit, the IFTA governing documents required Anderson to maintain receipts showing the fuel was placed in an IFTA-qualified vehicle. But for many of Anderson's purchases, the receipts were insufficient for the DMV to verify that the fuel was placed in an IFTA-qualified vehicle. The "tax paid fuel documentation [was] unavailable" for those purchases represented by receipts with only the driver's name. Therefore, under the audit manual's § A550.200, the DMV properly disallowed those claims for tax-paid fuel credits. The district court did not err in affirming the IFTA deficiency determination.

2. IRP ASSESSMENT
[7] Anderson filed renewal applications in Nebraska in 2003 and 2004 for apportioned registration under IRP. The DMV conducted an audit of Anderson's records to verify the mileage reported in the applications. Anderson did not keep mileage records during the audit period because Anderson believed it was not feasible to do so. After concluding that Anderson failed to maintain proper mileage records, the DMV assessed additional registration fees for Nebraska. Anderson claims the DMV improperly assessed these additional fees.
To resolve this issue, we review Nebraska statutes[9] and regulations,[10] the IRP itself, and the IRP audit procedures manual. The record contains copies of the IRP documents. The copies show that some of the provisions on which we rely were amended during the 2004 audit period. As with the IFTA documents, the copies in the record contain only the revised language. Again, because the parties made these copies part of the record, we will rely on the language contained therein.
An IRP registrant pays all registration fees to the base jurisdiction. The base jurisdiction then apportions the fees and distributes them to all member jurisdictions through which the registrant traveled. The registration fees are based in part on the percentage of miles traveled in each member jurisdiction. As such, the distance the registrant's vehicles traveled in the respective jurisdictions is critical information for IRP's operation. The IRP and its audit procedures manual set forth record-keeping requirements so that the base jurisdiction can verify the registrant's reported miles.
*602 The IRP's § 1501 provides that a registrant must maintain records to prove its application filing. Section 1501 states that the source documents "must contain necessary details to trace vehicle movement." Section 1501 directs us to the audit procedures manual's § 400 for specific recordkeeping requirements.
Subsection 401 of the audit procedures manual mandates that the registrant "maintain operational records that support the total distance traveled in each jurisdiction and total distance traveled everywhere." Section 400 lists information that these mileage records must contain. The mileage records must include the trip origin and destination, total trip distance traveled, distance traveled by jurisdiction, and route of travel or beginning and ending odometer readings. A DMV regulation implementing the IRP similarly requires Nebraska registrants to maintain these mileage records.[11]
If a registrant fails to maintain the required records, the jurisdiction may impose an assessment of liability. Under the IRP's § 1502, the member jurisdiction must estimate the registrant's "true liability" from (1) information the registrant furnished (2) information the member jurisdiction gathered (3) information relative to other similar registrants based in the jurisdiction or (4) any other information available to the member jurisdiction. But "[i]f an estimate of the registrant's true liability cannot be determined," subsection 603 of the audit procedures manual provides that "the registrant may be assessed 100% registration fees for the [auditing] jurisdiction." (Emphasis supplied.) Similarly, a DMV regulation states, "If adequate records are not maintained or are not made available for audit, the registrant may lose the right to apportioned registration and may be subject to a possible full fee assessment."[12]
Anderson did not maintain mileage records during the audit period. According to Anderson, such logs were not feasible because of Anderson's day-to-day business operations, where the drivers drive all day, making multiple short trips between the jobsite and dumpsite. And, when the project is in downtown Omaha, the drivers often cross into Iowa for a dumpsite in Council Bluffs. Anderson claims that it was not feasible to log odometer readings for each "trip."[13]
After deciding it could not determine an estimate of Anderson's true liability without the required mileage records, the DMV assessed 100-percent registration fees for Nebraska. The deficiency determination (an additional $18,000 in registration fees) represented the difference between the percentage of Nebraska miles Anderson stated on its renewal application and the 100-percent assessment. The auditor testified that this assessment increased the reported Nebraska percentage to 100 percent. The assessment, however, left the other jurisdictions' percentages as Anderson initially reported, meaning the 100-percent assessment for Nebraska did not deny the other jurisdictions the amounts to which they were entitled.
The issue is whether the DMV correctly concluded it could not determine an estimate of Anderson's true liability.
Anderson claims that an estimate of its true liability can be determined and that therefore, the 100-percent assessment for Nebraska fees was not justified. Although Anderson did not keep the required mileage records, it offered payroll records to show the percentage of hours drivers *603 worked in various jurisdictions. The records show that during the audit period, Anderson performed jobs in states other than Nebraska, including Iowa, Alabama, Kansas, Louisiana, Maryland, Missouri, and Tennessee. The records also purportedly show that, on average, 67 percent of the hours worked by Anderson drivers were in Nebraska, 15 percent were in Iowa, and another 19 percent were in other states. Anderson contends that these percentages provide a reasonable estimate of the percentage of miles driven in the respective jurisdictions because the employees spent their working hours driving.
The DMV argues that Anderson's reliance on general labor records that bear no relation to mileage cannot be accepted because the IRP requires documents showing actual mileage. We agree with the DMV that the payroll records are insufficient to estimate mileage traveled. At one point in her testimony, Anderson's bookkeeper stated, "I couldn't prove in any way, shape, or form, that they left that job site for any reason. They could have been sitting there all day long waiting for their truck to be filled up." This testimony shows no direct correlation exists between hours worked and miles driven because there is no guarantee that the drivers spend every working hour driving.
The payroll records, without any mileage information, did not enable the DMV to estimate the percentage of distance traveled in each jurisdiction. Because "an estimate of [Anderson's] true liability cannot be determined," the audit procedures manual allows for an assessment of 100-percent registration fees for Nebraska.[14]
As with IFTA, Nebraska has a responsibility to protect the integrity of IRP by performing a complete and accurate audit. Section 100 of the audit manual recognizes the importance of this responsibility:
100.2 The purpose of auditing registrants under the [IRP] is to protect the integrity of the vehicle registration laws of all jurisdictions party to the IRP and to ensure equitable treatment of all registrants subject to the IRP.... [I]t is incumbent upon each jurisdiction to meet its obligations under the provisions of the IRP, i.e., proportional registration of commercial vehicles, by insuring proper documentation of carrier total distance operated, and official examination and verification of the appropriate records....
Nebraska cannot carry out its responsibility of conducting an accurate audit when a registrant fails to provide the required mileage records or other records from which the DMV can estimate the registrant's true liability.
We conclude that without the mileage records, the DMV could not estimate Anderson's true liability. The DMV was therefore justified in imposing the 100-percent assessment against Anderson for its failure to maintain the proper records. The district court did not err in affirming the IRP deficiency determination.

VI. CONCLUSION
We conclude that Anderson was not entitled to IFTA tax-paid credit for fuel purchases when the receipts only identified the driver. Therefore, the DMV properly disallowed Anderson's claims for credit on those purchases. The district court did not err in affirming the DMV's IFTA deficiency determination.
We further conclude that because Anderson failed to maintain mileage records documenting distance traveled in IRP member jurisdictions, the DMV was unable *604 to estimate Anderson's IRP liability. Therefore, IRP allowed an assessment against Anderson of 100-percent registration fees for Nebraska. The district court did not err in affirming the DMV's 100-percent assessment against Anderson.
AFFIRMED.
McCORMACK, J., participating on briefs.
HEAVICAN, C.J., not participating.
NOTES
[1] See Neb.Rev.Stat. §§ 60-3,198(4) (Cum. Supp. 2006) and 66-1411(1) (Reissue 2003).
[2] See Holmes v. State, 275 Neb. 211, 745 N.W.2d 578 (2008).
[3] See id.
[4] Betterman v. Department of Motor Vehicles, 273 Neb. 178, 728 N.W.2d 570 (2007).
[5] See Neb.Rev.Stat. §§ 66-1401 to 66-1419 (Reissue 2003. Cum. Supp. 2006 & Supp. 2007).
[6] See 251 Neb. Admin. Code, ch. 1 (1998).
[7] Brief for appellant at 12.
[8] 251 Neb. Admin. Code. ch. 1, § 016.02.
[9] See Neb.Rev.Stat. §§ 60-3,192 to 60-3,206 (Cum. Supp. 2006 & Supp. 2007).
[10] See 251 Neb. Admin. Code, ch. 2 (1999).
[11] See 251 Neb. Admin. Code. ch. 2. § 014.
[12] 251 Neb. Admin. Code, ch. 2. § 013.07.
[13] Brief for appellant at 14.
[14] See, also, 251 Neb. Admin. Code, ch. 2, § 013.07.